UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

SANQUA CUMMINGS,

        Petitioner,

v.

RANDEE REWERTS,

        Respondent.

_____/

Case No. 1:19-cv-878

Honorable Paul L. Maloney

# **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I. **Factual allegations**

Petitioner Sanqua Cummings is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Montcalm County, Michigan. Following an eight-day jury trial in the Kent County Circuit Court, Petitioner was convicted of first-degree premeditated murder, in violation of Mich. Comp. Laws § 750.316; commission of a gang-related felony, in violation of Mich. Comp. Laws § 750.411u; felon in possession of a firearm (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On January 19, 2017, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of life without parole for murder, 23 to 75 years for gang-related felony, and 23 to 75 years for felon-in-possession. Those sentences were to be served consecutively to a 5-year term of imprisonment for felony-firearm.

The Michigan Court of Appeals described the basic facts underlying Petitioner's criminal prosecution as follows:

> Just after midnight on August 12, 2015, Marquaan Crosby was shot and killed. The prosecution presented evidence that Cummings and three accomplices ambushed Crosby and three others as they were walking near Adams Street and Marshall Avenue in Grand Rapids, Michigan. There was evidence that Cummings and his friends were members of the Bemis street gang and of a sub-group that Cummings named "Trained To Go" (TTG). It also appears that Cummings's group believed that the individuals they ambushed were members of a rival street gang called "900" or "Adams." Several witnesses testified that Cummings and his accomplices planned the shooting because two Adams gang members had shot at Cummings following a verbal altercation on August 11, 2015. There was testimony that Cummings was one of the individuals who fired shots at the victim; however, no one directly identified him as the person who killed the victim.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.36.) The fact that Petitioner was not conclusively determined to be the shooter who killed Marquaan Crosby did not preclude a finding of guilt on

first-degree murder. As the appellate court pointed out, "'[a] defendant may be vicariously liable for murder on a theory of aiding and abetting.'" (*Id*., PageID.37.) The court of appeals described the underlying facts relating to aiding and abetting liability as follows:

> The evidence at trial established the existence of gang rivalry: the Bemis gang and TTG members prided themselves in their readiness to shoot and kill opponents. There was evidence that Cummings and the people he was with were associated with the Bemis gang and the TTG sub-group. Further, the individuals firing at the victim—Cummings and at least two other members of TTG—traveled to the area where the shooting took place and searched for someone to shoot as retaliation for members of the Adams gang shooting at Cummings the previous day. . . . The individuals with Cummings at the time of the shooting admitted at trial that they all intended to shoot to kill and injure Adams gang members. . . . Before the shooting, Cummings and another individual hid in one location while the other two individuals with Cummings hid in another spot. The person hiding with Cummings testified that he did not shoot, but that he heard gunshots coming from the area he was in, which allows for an inference that Cummings fired a gun. Multiple witnesses testified that after the shooting Cummings stated that he thought he had hit someone. There was also testimony that the bullets in the victim's body matched the gun that Cummings was known to carry and use to shoot at people. . . . [T]here was evidence that Cummings orchestrated the trip to Adams Street so that TTG could retaliate against the Adams gang for shooting at him the previous day. Further, witnesses testified that Cummings fired at the victim, who he believed he successfully hit. . . . Finally, the record reflects that after the shooting, Cummings and the others fled the area, hid their guns, and lied about their involvement.

(*Id*., PageID.37-38.)

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals. He raised two issues, identified by the court of appeals as follows: (1) "the prosecution presented legally insufficient evidence to convict [Petitioner] of first-degree premeditated murder . . .[;]" and (2) Petitioner's "lawyer provided ineffective assistance because he failed to prevent admission of evidence of [Petitioner's] alleged gang membership." (*Id*.) By unpublished opinion issued February 13, 2018, the Michigan Court of Appeals denied relief, affirming the trial court.

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court, presumably raising the same issues he raised in the court of appeals. *See*

3

https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx (search docket number 336940). By order entered July 27, 2018, the Michigan Supreme Court denied leave to appeal "because [the court] was not persuaded that the questions presented should be reviewed . . . ." (Mich. Order, ECF No. 2-1, PageID.42.)

On October 21, 2019, Petitioner timely filed his habeas corpus petition raising two grounds for relief, as follows:

I. Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel and his right to due process where trial counsel failed to appeal the alleged gang membership charge.

II. The evidence was insufficient to support Petitioner's conviction of first-degree murder.

(Pet., ECF No. 1, PageID.3.)

## II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

5

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Discussion

#### A. Gang membership

The crux of Petitioner's first habeas challenge is the alleged due process violation he contends occurred because the jury's view of him was tainted by all of the evidence that Petitioner was a gang member. That evidence, Petitioner reasons, was only admitted because of the gang-related felony charge. That charge, in turn, was only before the jury because his counsel failed to secure dismissal of the charge in the district court or the circuit court.

Petitioner's presentation of this issue here appears to deviate from his presentation of the issue in the Michigan appellate courts. Here, Petitioner focuses his ineffective assistance claim on counsel's failure to seek an interlocutory appeal after counsel failed to obtain dismissal of the charge in the lower courts. There is nothing in the court of appeals' opinion that suggests he framed the issue as a failure to file an interlocutory appeal when he raised it in the Michigan appellate courts.

6

If Petitioner did not make the claim that counsel was ineffective for failing to file an interlocutory appeal in the Michigan appellate courts, that claim remains unexhausted. Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). It does not appear that Petitioner has ever fairly presented the issue of counsel's failure to file an interlocutory appeal at either level of the Michigan appellate process. Although the habeas statute prevents the Court from granting habeas relief on an unexhausted claim, 28 U.S.C. § 2254(b)(1), the Court may still deny relief on such a claim, 28 U.S.C. § 2254(b)(2). The Court will proceed to consider the claim to determine if it is properly denied.

An understanding of the gang-related felony statute is necessary to address Petitioner's argument. That statute provides:

> "If a person who is an associate or a member of a gang commits a felony or attempts to commit a felony and the person's association or membership in the gang provides the motive, means, or opportunity to commit the felony, the person is guilty of a felony punishable by imprisonment for not more than 20 years."

Mich. Comp. Laws § 750.411u(1). That statute defines gang as follows:

> (a) "Gang" means an ongoing organization, association, or group of 5 or more people, other than a nonprofit organization, that identifies itself by all of the following:
>
> > (i) A unifying mark, manner, protocol, or method of expressing membership, including a common name, sign or symbol, means of recognition, geographical or territorial sites, or boundary or location.
>
> > (ii) An established leadership or command structure.

7

    (iii)  Defined membership criteria.

*Id*.

    In Petitioner's case, the prosecutor argued that Petitioner committed first-degree murder and that Petitioner's gang membership provided the motive, means, and opportunity to commit the felony. Petitioner argues that there was no gang—the evidence was insufficient to show that he was a gang-member at the time of the shooting or that the shooting was gang-related. For that reason, counsel should have succeeded in securing dismissal of the gang charge when he challenged the bindover or on the motion for directed verdict or, as he now argues, by filing an interlocutory appeal. Then, according to Petitioner, the evidence of prior gang activity would not have come in and the jury would not have been tainted.

    Petitioner implicitly bases his constitutional argument on the premise that, but for the gang-related felony charge, evidence that the gang provided the motive, means, and opportunity for the murder would not have been admissible. Petitioner contends that such evidence would then have been properly excluded under Michigan Rule of Evidence 404(b) regarding other crimes, wrongs, or acts.

    Petitioner's contention, however, is directly contradicted by the language of Rule 404(b) which specifically declares admissible evidence of other crimes, wrongs, or acts for the purpose of "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident . . . ." Mich. R. Evid. 404(b). So long as the prosecutor could make the claim that the murder was motivated by the gang, or that the gang provided the means or opportunity for the crime—and Petitioner's friends' testimony supported that claim---the evidence was coming in, with or without the gang-related felony charge. In that sense, whether counsel attempted or succeeded in securing dismissal of the charge in the district

8

court, the circuit court, or the court of appeals on interlocutory appeal would not likely have altered the admissibility of the gang-related evidence.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. If the evidence would have been admissible with or without the charge, counsel's failure to secure dismissal of the charge—whether by failing to stop the bindover, failing to obtain a directed verdict, or failing to file an interlocutory appeal—had no effect on the judgment.

The Michigan Court of Appeals concluded that Petitioner had failed to show prejudice from counsel's failure to secure dismissal of the charge. The court of appeals determined

9

that the evidence was plainly sufficient to satisfy the requirements of the gang-related felony statute; therefore, any further attempt by counsel to secure dismissal of the charge would have been futile. The court of appeals recounted that sufficient evidence as follows:

> Several witnesses testified that Cummings belonged to the Bemis gang. Specifically, a retired Kent County jail administrator, an expert on gangs, testified that the jail flagged Cummings as a Bemis gang member dating back to 2009 when he got booked into the jail on another offense, and several of Cummings's cohorts testified that Cummings was a member of the Bemis gang and hung out at Martin Luther King Park with other Bemis gang members. They testified that the Bemis gang understood that their territory covered a large area including Bemis Street and the Martin Luther King Park areas. One of Cummings's cohorts testified that once one became a member of the Bemis gang, one always remained a member, and members were obligated to commit criminal activities for the gang. The retired jail administrator also testified that the Bemis gang had several subsets of smaller gang-related groups. Older members directed younger subordinate members to commit violent acts for them. One of Cummings's cohorts and a member of TTG admitted that TTG was a subset of the Bemis gang and that all TTG members were associated with the Bemis gang. There was also testimony that the Bemis gang had over 100 members. There was significant evidence that Cummings was a member of the Bemis gang and that the Bemis gang satisfied the definition of a gang set forth in MCL 750.411u.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.40.)

As part of this argument regarding counsel's ineffectiveness, Petitioner attacks the sufficiency of the gang evidence. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the

prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Petitioner does not contend that the court of appeals mischaracterized the record when it identified the evidence that it found sufficient to meet the elements of the gang-related felony charge. Instead, Petitioner argues that the evidence is insufficient if you look at it in a light that favors him, reject the credibility of the witnesses that favor the prosecution, and draw inferences from the evidence that come out in Petitioner's favor. Petitioner's challenge runs afoul of the *Jackson* standard in all three respects.

The Michigan Court of Appeals considered the sufficiency of the gang-related felony evidence consistently with the *Jackson* decision. The appellate court viewed the evidence, reasonable inferences, and possible credibility determinations in a light that favored the prosecution and with reference to the elements of the gang-related felony charge, determined a reasonable jury could have concluded that Petitioner was a member of the Bemis gang and that it

11

was the gang that provided the motive, means or opportunity for the shooting. That determination is not contrary to, nor is it an unreasonable application of, *Jackson*. Because there was sufficient evidence that Petitioner committed a gang-related felony, further attacks by counsel on the propriety of the gang-related felony charge would have been futile. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Therefore, Petitioner has failed to demonstrate that the appellate court's rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland* and he is not entitled to relief on that claim.

Finally, Plaintiff's statement of this issue seems to include a claim, independent of his ineffective assistance of counsel claim, that the admission of the gang-related "other bad acts evidence" was wrongful, either because it was inconsistent with Rule 404(b) or because it violated Petitioner's due process rights. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496,

512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Therefore, Petitioner's 404(b)/due process claim fails as well.

### B. Sufficiency of the evidence regarding murder

Petitioner's sufficiency challenge regarding his murder conviction parallels his gang-related felony sufficiency challenge. Petitioner argues there "was no evidence at trial that

13

the shooting was gang related." (Pet'r's Br., ECF No. 2, PageID.25.) Petitioner argues that his companions all worked out plea agreements and that their testimony was self-serving and should be rejected for that reason. (*Id.*) Petitioner goes through the trial, witness by witness, to demonstrate that if one simply looks to the right parts of the testimony, and draws the right inferences, and rejects the evidence Petitioner deems unreliable, that Petitioner was not guilty of actually killing the victim or of aiding and abetting the killing of the victim.

Petitioner is absolutely correct. The jurors could have gone the other way. But the fact that there may have been sufficient evidence to acquit Petitioner does not detract from the evidence identified by the court of appeals that sufficed to support his conviction. Once again, the court of appeals followed *Jackson*'s mandate. The court considered the evidence in a light that favored the prosecution and concluded that the evidence considered in that light, reasonable inferences from the evidence, and reasonable credibility determinations were sufficient to permit a reasonable jury to find beyond a reasonable doubt that Petitioner aided and abetted first-degree murder. Therefore, Petitioner's misdirected arguments do not show that the court of appeals determination of the sufficiency issue is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

14

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated: January 7, 2020    /s/ Paul L. Maloney
                                                                     Paul L. Maloney
                                                                     United States District Judge